1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TRUDI KELSEY,                                    No. C 05-02512 WHA

       Plaintiff,

  v.                                             **ORDER DENYING PLAINTIFF'S
                                                 MOTION FOR SUMMARY
JO ANNE B. BARNHART, Commissioner of            JUDGMENT AND GRANTING
Social Security,                                 DEFENDANT'S CROSS-MOTION
                                                 FOR SUMMARY JUDGMENT**
       Defendant.
_____/

**INTRODUCTION**

    In this social security appeal, the Court finds that the administrative law judge had a
substantial basis for determining that plaintiff was not disabled.  The Court further finds that the
ALJ properly refused to reopen plaintiff's prior applications for disability benefits.
Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion
for summary judgment is **GRANTED**.

**STATEMENT**

1.    **PROCEDURAL HISTORY.**

    On November 18, 2002, plaintiff Trudi Kelsey applied for disability insurance benefits
for the third time, alleging she had been disabled since July 27, 1998, due to allergies to metals
including palladium, muscle spasms and joint pain (AR 109B, 112, 115–17, 213).  Plaintiff was
49 years old on the alleged onset date (AR 115).  Plaintiff was insured through December 31,

1  2003 (AR 17).  Her application was denied both initially and upon reconsideration and she

2  requested a hearing before an ALJ (AR 87–92).

3      On December 17, 2003, plaintiff had a hearing before ALJ Richard P. Laverdure

4  (AR 16–25).  The ALJ rendered a decision on November 10, 2004, finding that plaintiff's prior

5  application would not be reopened and that she was not disabled (AR 16, 24).  Plaintiff

6  requested administrative review (AR 12).  The Appeals Council denied the request (AR 8).

7  Plaintiff filed an action before this Court on June 21, 2005, seeking judicial review pursuant to

8  42 U.S.C. 405(g).  The parties now make cross-motions for summary judgment.

9      **2.    THE ADMINISTRATIVE HEARING.**

10     At the hearing before the ALJ, plaintiff testified that she had an undergraduate education

11  in film making and had taken classes towards a master's degree but ended the program in

12  Spring 2001 (AR 45–46, 49–51).  Prior to the alleged onset of her disability, plaintiff explained

13  that she worked as a teller and a manager in the banking industry (AR 46, 60).  After July 1998,

14  plaintiff stated that she worked sporadically from her apartment, primarily doing freelance

15  research for friends and assembling multimedia presentations for her church (AR 36, 47–48,

16  51–53).

17     Plaintiff described that during her period of alleged disability she suffered from an

18  inability to adjust to environments outside of her apartment (AR 32).  Plaintiff explained that

19  anytime she left her apartment, she subsequently became incapacitated for periods of up to one

20  week (AR 35, 39, 45).  The aftermaths of her outings were apparently most difficult when she

21  had entered buildings with air-conditioning or mold or when she had to traverse the hills outside

22  her apartment (AR 33, 41–44).  Plaintiff testified that during these stretches, she suffered from

23  muscle pain, muscle spasms, fatigue, sleeplessness and pain and swelling in her teeth and gums

24  (AR 33, 44).  Plaintiff said she had difficulty sleeping through the night due to pain and muscle

25  spasms (AR 38).  To combat her ailments, plaintiff stated that she spent time meditating and

26  took homeopathic medications (AR 33–34).  She testified that although she had a prescription

27  for ibuprofen, she took it only sparingly to avoid chemical dependence (AR 33–34, 38).  In

28

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

1    addition to her hypersensitivity to environmental stimuli, plaintiff suggested that the bouts of

2    incapacity were brought on by her thyroid condition known as "Hashimoto's thyroiditis"

3    (AR 39–41).

4           Plaintiff testified that on days when she felt strong, she could perform basic household

5    chores such as cooking and vacuuming, but only by working slowly and for limited intervals

6    (AR 35–36).  Plaintiff reported spending significant portions of her day researching her medical

7    conditions and handling her social-security matter (AR 53–54).  As for her computer-related

8    work, plaintiff performed such activity only in limited stretches with frequent breaks (AR 36).

9    As a result of her outbreaks, plaintiff explained that she had to avoid computer use altogether

10   for roughly fifteen days per month (AR 44).

11          Also at the hearing, plaintiff's attorney explained plaintiff's test results for metal

12   hypersensitivity (AR 28–31).  The attorney told the ALJ that the primary metal for which

13   plaintiff tested positive for allergic reaction was palladium, a metal used in dental fillings

14   (AR 29–30).  The attorney also informed the ALJ that as a result of the allergy, plaintiff had

15   dental work to remove all of her fillings (AR 30).  Plaintiff explained to the ALJ that the

16   removal process took one year and failed to improve her condition (AR 61–62).  The ALJ noted

17   that, in addition to her thyroid condition and palladium allergy, plaintiff's records indicated that

18   she had "allergic rhinitis, chronic sinusitis, hepatitis A and B, pain and digestive disorder, tooth

19   infection, hypertension [and] dislipidemia" (AR 54).

20          A vocational expert, Robert Raschke, was also present at the hearing (AR 57).  The ALJ

21   focused his questions to the vocational expert on potential limitations imposed by a palladium

22   allergy (AR 57–60).  The vocational expert testified that hypersensitivity to palladium was rare

23   and that people employed in dental offices were most likely to be aversely effected by such a

24   condition (AR 59).  The expert stated that he arrived at this conclusion after "I talked to my

25   own dentist about this a number of different times" (*ibid*.).

26

27

28                                                       3

**United States District Court**
For the Northern District of California

1    **3.    MEDICAL EVIDENCE.**

2       The medical evidence was summarized in the ALJ's decision (AR 17–24).  This order

3    briefly reviews the most significant findings of the physicians and clinics that examined

4    plaintiff.

5       The San Francisco State Student Health Center saw plaintiff from June 1998 to March

6    2002 (AR 314–362).  The Center found that plaintiff had a history of Hashimoto's Thyroiditis[1]

7    and prescribed her medication for this condition (AR 314, 362).  In 2000, the Center responded

8    to plaintiff's reports of lower-leg pain when dancing, performing tai chi or walking up hills, by

9    recommending that plaintiff reduce activity levels and wear shock-absorbing footwear

10   (AR 329).

11      Dr. Eugene McMillan, M.D., performed a consultative evaluation of plaintiff on April

12   17, 2001 (AR 288–92).  After conducting physical and psychological testing, Dr. McMillan

13   concluded that plaintiff had no physical, postural or environmental limitations or limitations on

14   walking, lifting or sitting (AR 290).  He found plaintiff capable of performing activities

15   commensurate with any person of plaintiff's age and build (*ibid.*).

16      Dr. Victor Rosenor, M.D., performed consultative examinations in November 2001 and

17   January 2003 at the request of the Social Security Administration (AR 367–71).  Dr. Rosenor

18   initially found plaintiff fit for sedentary occupations requiring plaintiff to carry no more than

19   forty pounds at a time (AR 371).  In his second evaluation, Dr. Rosenor concluded that plaintiff

20   was only fit for a sedentary occupation that did not involve lifting more than twenty pounds

21   (AR 368).

22      Plaintiff visited Marin Community Clinic, in particular Dr. Georgeanna Farren, M.D.,

23   from October 1998 to March 2003 (AR 372–410, 476, 524–27).  In a letter dated April 24,

24   2004, Dr. Farren encapsulated her findings (AR 476):

25   _____

26       [1] According to the United States Department of Health and Human Services, Hashimoto's Thyroiditis is an
     autoimmune disease in which the immune system attacks the thyroid gland. *See*

27   http://www.4woman.gov/faq/hashimoto.htm.

28                                    4

> Ms. Kelsey suffers from multiple medical problems that prevent
> her from working with regularity. She is hypothyroid and suffers
> from sensitivity to chemicals within closed buildings or buses.
> She also has a history of chronic sinusitis, and has been diagnosed
> with palladium toxicity. She also has high cholesterol, elevated
> blood pressure and is easily fatigued. Due to the additive nature
> of the symptoms of those chronic problems Ms. Kelsey is unable
> to work regularly. She is very attentive to her health and is
> currently strictly following a dietary and treatment regimen. It is
> my opinion that she is unable to work, and will continue to be
> disabled for the foreseeable future.

The University of California, San Francisco Medical Center, and in particular allergist

Dr. Pedro Avila, M.D., saw plaintiff between August 1999 and April 2003 (AR 411–474).

Plaintiff was found to have a sensitivity to palladium[2] (AR 422). Dr. Avila readily admitted in

his assessment that limited information and testing was available for palladium hypersensitivity

but conjectured that such an allergy could cause plaintiff's symptoms (AR 423). Dr. Avila

proposed to plaintiff that she seek psychiatric counseling to determine if any of her symptoms

were psychosomatic, an idea plaintiff apparently rejected (AR 425). Dr. Avila also indicated

that plaintiff suffered from vasomotor rhinitis that could be treated with Nasonex and Allegra

(AR 423). Dr. Avila further determined that plaintiff demonstrated sensitivity to aluminum and

suggested that plaintiff cease wearing costume jewelry (AR 439–40). UCSF referred plaintiff

to dermatologist Dr. Howard Maibach, M.D. who corroborated that plaintiff had a "delayed

hypersensitivity to palladium" (AR 422).

Dr. Yuly Vilderman, DDS, removed porcelain crowns and amalgam fillings in plaintiff's

mouth, in response to her reports that she suffered from metal allergies and was being sickened

by the metal in the fillings (AR 365).

Finally, in April 2004, Dr. Michael Dietrick, M.D. performed a psychiatric evaluation of

plaintiff (AR 528–31). Dr. Dietrick found that plaintiff suffered from an adjustment disorder

with some anxiety and depression, but that plaintiff did not have any significant psychiatric

disorder (AR 530).

---

[2] Palladium is "a rare metallic element of the platinum group . . . used chiefly as a catalyst and in dental and other alloys." THE RANDOM HOUSE COLLEGE DICTIONARY (Revised 1st ed.).

5

1

**ANALYSIS**

2

**1.    LEGAL STANDARD.**

3

A decision denying disability benefits must be upheld if it is supported by substantial

4 evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

5 Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v.*

6 *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion." *Ibid.* A court must "review the

8 administrative record as a whole, weighing both the evidence that supports and that which

9 detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for

10 determining credibility, resolving conflicts in medical testimony, and for resolving

11 ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation,

12 the decision of the ALJ must be upheld. *Ibid.*

13

A claimant has the burden of proving disability. *Id.* at 1040. Disability claims are

14 evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must

15 determine: (1) whether the claimant is working, (2) the medical severity and duration of the

16 claimant's impairment, (3) whether the disability meets any of those listed in Appendix 1,

17 Subpart P, Regulations No. 4, (4) whether the claimant is capable of performing his or her

18 previous job and (5) whether the claimant is capable of making an adjustment to other work. 20

19 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the

20 claimant can engage in other types of substantial gainful work that exists in the national

21 economy." *Andrews*, 53 F.3d at 1040. The use of the Medical-Vocation Guidelines, or "grids",

22 at step five is proper "where they *completely and accurately* represent a claimant's limitations"

23 and the claimant can "perform the *full* range of jobs in a given category." *Tackett v. Apfel*,

24 180 F.3d 1094, 1101 (9th Cir. 1999)(emphasis in original). Although "the fact that a

25 non-exertional limitation is alleged does not automatically preclude application of the grids,"

26 the ALJ must first determine whether the "claimant's non-exertional limitations significantly

27 limit the range of work permitted by his exertional limitations." *Id.* at 1102.

28

6

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

2.      THE ALJ'S FIVE-STEP ANALYSIS.

At step one of his decision, the ALJ found that plaintiff had engaged in some work after the alleged onset of her disability (AR 17).  Nevertheless, the ALJ concluded that claimant's post-onset work did not rise to the level of substantial (*ibid.*).

Next, the ALJ concluded that plaintiff had numerous impairments which qualified as "severe" (*ibid.*).  The ALJ found that plaintiff had the impairments of hepatitis A and B, rhinitis, chemical allergies, sensitivity to palladium, Hashimoto's thyroiditis and hypertension.  The ALJ viewed plaintiff's high cholesterol and adjustment disorder in combination with plaintiff's other impairments, without regard to the separate severity of these two conditions (*ibid.*).  For purposes of step three, however, the ALJ found that none of plaintiff's impairments considered separately or cumulatively equaled any of the impairments listed in the Social Security regulations (*ibid*).

On step four, the ALJ found that plaintiff had "the residual functional capacity for medium exertional work" (AR 22).  The ALJ thereby concluded that plaintiff was still capable of performing her past relevant work and, therefore, was not disabled (AR 24).  The ALJ indicated that plaintiff's past work as "an office manager and as a consultant was performed at less than the medium exertional level" (*ibid.*).

As an alternative ground for finding plaintiff was not disabled, the ALJ conducted the fifth step of the analysis (AR 24–25).  The ALJ applied the grids and determined that plaintiff's "residual functional capacity" set her within one of the grid categories (*ibid.*).  The ALJ did not specify within which job category plaintiff fell (*ibid.*).

*First*, plaintiff contends that the ALJ improperly weighed the medical evidence, in particular by discounting the opinion of treating physician Dr. Farren (Br. 10–16).  *Second*, plaintiff argues that the ALJ errantly determined plaintiff could perform past relevant work at step four (Br. 16).  *Third*, plaintiff contends that the ALJ improperly applied the grids in alternatively denying plaintiff's claim at step five (Br. 18–20).  *Fourth*, plaintiff argues that her

1    due process rights were violated by the ALJ's failure to reopen plaintiff's prior disability

2    applications (Br. 7–9).

3           **3.**       **TREATING PHYSICIAN'S OPINION.**

4           Our circuit distinguishes among the opinions of three types of physicians:

5                       (1) those who treat the claimant (treating physicians); (2) those

6                       who examine but do not treat the claimant (examining
                        physicians); and (3) those who neither examine nor treat the
                        claimant (nonexamining physicians).

7

8    *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, more weight is given to a

9    treating physician's opinion than to the opinion of a non-treating physician because the former

10   "is employed to cure and has a greater opportunity to know and observe the patient as an

11   individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Even if another

12   physician's opinion contradicts the treating physician's opinion, the ALJ  "may not reject this

13   opinion without providing specific and legitimate reasons supported by substantial evidence in

14   the record for so doing."  *Lester*, 81 F.3d at 830 (internal citation omitted).

15          Plaintiff's primary attack on the ALJ's consideration of the medical evidence is that the

16   ALJ improperly denied controlling weight to treating physician Dr. Farren's opinion (Reply Br.

17   4–8).  This order finds, however, that the ALJ provided a thorough and legitimate explanation

18   for why he did not afford the opinion controlling weight (AR 22–23).  The ALJ's reasons can

19   be distilled into three.  *One*, the ALJ found that the opinions of other physicians contradicted

20   Dr. Farren's ultimate conclusion that plaintiff was incapable of working (AR 18–19, 23).  *Two*,

21   the ALJ rejected plaintiff's self-assessment of the severity of her limitations, which in turn

22   diminished the value of Dr. Farren's opinion since the doctor relied on that self-assessment

23   (AR 23).  *Three*, the ALJ concluded that Dr. Farren did not provide sufficient data to

24   substantiate that one afflicted with palladium allergy could suffer as plaintiff allegedly did

25   (*ibid.*).  The ALJ, therefore, determined that the opinions of plaintiff's other physicians

26   deserved equal or greater consideration (*ibid*).

27

28
                                                            8

**United States District Court**
For the Northern District of California

1    This order finds that the ALJ offered substantial and legitimate reasons to reject Dr.

2  Farren's conclusions.  It is undeniable that the opinions of Dr. Rosenor and Dr. McMillan

3  clashed with Dr. Farren's opinion (AR 290, 368–71, 476).  Dr. Rosenor found on two separate

4  occasions that plaintiff could work with moderate weight-lifting limitations (AR 367–71).  Dr.

5  McMillan found that plaintiff could work without *any* limitations (AR 290).  While plaintiff

6  argues that the ALJ improperly balanced the remainder of the medical evidence as well, there is

7  no indication in the record that any other physician agreed with the suggestion that plaintiff

8  could not work (Br. 13–14).

9    As noted above, however, the ALJ must go beyond simply identifying a conflict.  *Lester*,

10  81 F.3d at 830.  Here, the ALJ also found Dr. Farren's reliance on plaintiff's self-assessment

11  dubious (AR 23).  The ALJ justifiably did not find plaintiff's self-assessment trustworthy

12  (*ibid*.).  "The record indicates that claimant was a dance major, lived on a hill, walked to and

13  from the hill to the bus and had a full range of motions and no postural limitations" (AR 22–23).

14  This reasoning distinguishes the instant case from *Benecke v. Barnhart*, 379 F.3d 587, 593–594

15  (9th Cir. 2004).  The *Benecke* opinion condemned the ALJ because he "relied largely on

16  Benecke's ability to carry out certain routine tasks."  *Id*. 594.  In contrast, ALJ Laverdure found

17  that across the period of review, plaintiff's activity level was high, even if it was recently

18  diminished, and even still plaintiff could perform many basic activities (AR 23).

19    Likewise, the ALJ reasonably concluded that Dr. Farren inadequately justified her

20  opinion with objective data.  The ALJ emphasized Dr. Farren's failure to cite "clinical findings,

21  x-ray results, or laboratory results that are consistent with the degree of limitation she and the

22  claimant allege" (AR 23).  Our circuit has cautioned that an ALJ's expectations of objective

23  corroboration must not be unreasoanble.  *Benecke*, 379 F.3d at 594.  "The ALJ erred by

24  effectively requiring objective evidence for a disease that eludes such measurement."  *Ibid*.

25  (internal citation omitted).  Palladium hypersensitivity may be such a disease.  Dr. Avila, a

26  physician the ALJ relied on heavily, noted that "there are no diagnostic tests or specific

27  treatments for this illness, since not much is known about it" (AR 23, 423).  Yet Dr. Farren's

28

United States District Court

For the Northern District of California

1    opinion was worse than unobjective.  "Dr. Farren's opinion to a great extent is more the

2    product of advocacy than objective medical assessment" (AR 23).  Indeed, Dr. Farren primarily

3    stated conclusions in her findings letter, not medical facts (AR 476).  "An ALJ may discredit

4    treating physicians' opinions that are conclusory, brief, and unsupported by the record as a

5    whole, or by objective medical findings."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

6    1190, 1195 (9th Cir. 2004)(internal citation omitted).

7            This order finds that the ALJ properly and reasonably weighed the evidence before him.

8    Given this, the ALJ had a substantial basis for his conclusion at step four that plaintiff was

9    capable of performing her past relevant work and thus not disabled.  The ALJ determined that

10   plaintiff could handle positions akin to office manager or consultant, which require "less than

11   the medium exertional level" (AR 24).  "When evidence reasonably supports either confirming

12   or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."

13   *Batson*, 359 F.3d at 1196.  The Court declines to do so here.  Since the ALJ reasonably applied

14   step four, we do not reach the ALJ's alternative finding that plaintiff was not disabled under

15   step five.

16           **4.      REOPENING OF PRIOR APPLICATIONS.**

17           Plaintiff has also raised a constitutional challenge to the ALJ's refusal to reopen

18   plaintiff's prior applications for benefits (Br. 7–9; AR 16).  The Social Security regulations

19   provide that a successful claimant may only receive retroactive benefits for the twelve months

20   preceding the filing of the application.  20 C.F.R. 404.621 (a)(1)(i).  Had the ALJ authorized the

21   reopening of plaintiff's previous petitions, plaintiff could have sought benefits from the onset

22   date of her disability, July 27, 1998, since plaintiff used this onset date in each of her previous

23   two applications (Reply Br. 3; AR 109B, 112, 115–17).

24           "A decision not to reopen a prior, final benefits decision is discretionary and ordinarily

25   does not constitute a final decision; therefore, it is not subject to judicial review."  *Udd v.*

26   *Massanari*, 245 F.3d 1096, 1098–1099 (9th Cir. 2001)(internal citation omitted).  An exception

27   exists "where the Secretary's denial of a petition to reopen is challenged on constitutional

28

10

United States District Court

For the Northern District of California

1  grounds." *Ibid*. (internal citation omitted).  This exception applies to "any colorable

2  constitutional claim of due process violation that implicates a due process right either to a

3  meaningful opportunity to be heard or to seek reconsideration of an adverse benefits

4  determination." *Ibid*. (internal citation omitted).  A challenge is a colorable constitutional claim

5  if it is not "wholly insubstantial, immaterial, or frivolous." *Ibid*. (internal citation omitted).

6        Plaintiff argues that due process requires us to reconsider the Administration's refusal to

7  reopen her prior applications (Br. 7–8).  Plaintiff requested reopening in a letter to the

8  Administration dated October 28, 2002 (Tr. 78–79).  In the letter, plaintiff indicated several

9  grounds justifying her failure to timely seek reopening: (1) her mother's deteriorating health, (2)

10  her graduate-school coursework, (3) her own deteriorating health and (4) her "fragile" mental

11  and emotional state (*ibid*.).  Plaintiff adds in her current motion that she was not assisted by

12  counsel at the time (Br. 8).  Our circuit seemingly counsels us to err on the side of finding a

13  colorable claim so as to allow jurisdiction for review on the merits of the denial:

14            Where a claimant alleges that a prior determination should be
            reopened because he suffered from a mental impairment and was
15            not represented by counsel at the time of the denial of benefits, he
            has asserted a colorable constitutional claim.
16
17  *Udd*, 245 F.3d at 1099 (internal citation omitted).  Having so found a colorable claim, we have

   jurisdiction to consider the merits of plaintiff's due process claim.  *Ibid*.
18
19        "[D]ue process requires that a claimant receive meaningful notice and an opportunity to

20  be heard before his claim for disability benefits may be denied." *Ibid*. (internal citation

   omitted).  By its own rules, the Administration must determine if good cause exists to grant a
21
22  claimant an extension, when that claimant:

23            presents evidence that mental incapacity prevented him from
            requesting timely review of an administrative action, and the
            claimant had no one legally responsible for prosecuting the claim
24            on his behalf at the time of the prior adverse action.

25  *Ibid*. (citing Soc. Sec. Ruling 91-5p).  The ruling provides four factors for good cause: (1)

26  inability to read or write, (2) lack of facility with the English language, (3) limited education,

27  and (4) any mental or physical condition which limits the claimant's ability to do things for

28                                            11

1    herself.  Soc. Sec. Ruling 91-5p.  Reasonable doubt is to be resolved in favor of the claimant.

2    *Ibid*.

3           In *Udd*, our circuit found that the plaintiff's schizophrenia and lack of legal

4    representative satisfied good cause such that not reopening his previous application amounted to

5    a violation of due process.  245 F.3d at 1100.  In contrast, our circuit found that failure to

6    reopen applications from a claimant who suffered from depression, alcoholism and reduced

7    cognitive functionality was not a violation.  *Evans v. Chater*, 110 F.3d 1480, 1483–84 (9th Cir.

8    1997).

9           Viewing these cases as points on a spectrum, this order holds that the ALJ's decision not

10   to reopen plaintiff's prior applications did not deny her due process rights.  Plaintiff has

11   engaged in post-graduate study and has worked in a managerial capacity in a bank.  Plaintiff, as

12   detailed above, suffered from some physical ailments.  Even with plaintiff's dire view of her

13   own condition, however, she admitted that she spent considerable time preparing for her social

14   security case (AR 53–54).  Plaintiff presumably could have done timely that which she did

15   tardily.  Lastly, plaintiff has not demonstrated that her psychological condition, at the time

16   when she became delinquent, prevented her from complying.  At worst, plaintiff's

17   psychological condition was described as an adjustment disorder with accompanying anxiety

18   and depression (AR 530).  Plaintiff was not deemed to have any significant psychiatric disorder

19   (*ibid*.).  Even if her mental state was exacerbated by the unfortunate illness of her mother,

20   plaintiff's condition still better resembled *Evans* than *Udd*.  This order thus denies plaintiff's

21   request to reopen her prior applications.

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**. Defendant's cross-motion for summary judgment is **GRANTED**.  Judgment will be entered accordingly.


**IT IS SO ORDERED.**

Dated:  December 23, 2005



_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

13